**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | **CRIMINAL NO. 05-530-1** |
| **STANLEY SKEETERS** | : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO REDUCE SENTENCE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant Stanley Skeeters seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). This motion should be denied, because compassionate release is not available on the grounds he presents.

**I.   Background.**

   **A.   Criminal Conduct.**

On September 14, 2005, a grand jury in the Eastern District of Pennsylvania returned an indictment of Stanley Skeeters and his coconspirator, charging them with one count of conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Count One); four counts of interference with interstate commerce by robbery, and aiding and abetting, in violation of 18 U.S.C. §§ 1951 and 2 (Counts Two, Four, Six, and Eight), and four counts of possession of a firearm in furtherance of a violent offense, and aiding and abetting, in violation of 18 U.S.C. §§ 924(c) and 2 (Counts Three, Five, Seven, And Nine).

These charges arose out of Skeeters' involvement in a crime spree which lasted for just over two months, from October to December 2004, during which he and his coconspirator committed four armed robberies of pizza shops and a grocery store in Philadelphia. On each occasion, Skeeters and his girlfriend accosted store employees and others at gunpoint, stealing cash and personal items. During each of the robberies Skeeters wore either full Muslim female garb, or just the head covering, while his girlfriend wore full Muslim female garb. The robberies netted amounts ranging from $250 to $1,050. PSR ¶¶ 7-12.

Skeeters was then 28 years old. This was not his first crime spree. At the age of 20, on September 25, 1996, he committed an aggravated assault. On that occasion, two men were in a dispute, one left and then returned with Skeeters, who shot the other man. Three weeks later, on October 15, 1996, Skeeters stole a bicycle from a 15-year-old boy at gunpoint. Then the next day, he robbed a man on the El train at gunpoint of $24, a beeper, and a gold chain. Skeeters was arrested that day, in possession of a 9-mm. semi-automatic with seven rounds of ammunition. For all of those crimes, he was sentenced to 7½ to 15 years, and remained in state prison until May 19, 2004, just months before the instant offenses began. PSR ¶¶ 54-60.

In the present case, Skeeters proceeded to trial, and on March 27, 2006, following a one-week trial, the jury found Skeeters guilty of all charges. On August 23, 2006, this Court imposed a total term of imprisonment of 985 months (82 years and 1 month), consisting of a mandatory term of 7 years on the first 924(c) charge; mandatory consecutive terms of 25 years on each of the other three 924(c) charges; and one month

on the remaining counts. The Court also imposed a term of supervised release of five years, restitution of $1,615, and a special assessment of $900.

The instant offenses represented a violation of parole for his earlier state offenses. He thus first served the "back time" for those offenses, and remained in state custody until 2012. He did not commence serving the federal sentence until June 2012. At present, he is serving his sentence at USP Lewisburg, with an anticipated release date of May 23, 2082. He has served 99 months thus far, and earned 14 months in good conduct time, for time served of approximately 113 months of the 985-month term.

### B.     Request for Compassionate Release.

Skeeters, after exhausting an administrative request for relief, filed a motion for compassionate release in this Court on August 28, 2020, asserting five grounds: "(1) The draconian practice of 924(c) stacking; (2) COVID-19 pandemic and epidemic; (3) exceptional rehabilitation; (4) Congress enactment of § 403 under the First Step Act; and (5) a valid home plan, job opportunity, and support from family."

In essence, this request rests on the change in law related to "stacking" of 924(c) terms. The defendant, in effect, is seeking retroactive application of Section 403 of the First Step Act of 2018, which reduced the penalty for multiple 924(c) violations committed by an offender who had not previously incurred a 924(c) conviction. At the time of his offenses, the statute required a mandatory consecutive 25-year sentence for a second or successive 924(c) offense, even if all 924(c) charges were incurred in the same case. *See Deal v. United States*, 508 U.S. 129 (1993). Skeeters was therefore sentenced to

a seven-year mandatory term on the first of his 924(c) offenses (as the crime involved "brandishing"), and a consecutive term of 25 years on each of the other three.

In Section 403 of the First Step Act, effective December 18, 2018, Congress amended Section 924(c) to provide that the 25-year consecutive term for a successive 924(c) offense does not apply unless the defendant had a previous, final conviction for a 924(c) charge at the time of the offense. Under current law, the defendant would therefore face a consecutive seven-year sentence on each 924(c) charge. The statutory requirement still applies that each such sentence must run consecutively to each other and to any other sentence imposed. *See* First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222, § 403.

The determination of the retroactivity of a statutory provision is made by Congress. *Dorsey v. United States*, 567 U.S. 260, 274 (2012). With respect to the change to Section 924(c) adopted in the First Step Act, Congress stated its intent explicitly, providing in Section 403(b): "This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." Given that the defendant was sentenced before December 21, 2018, Section 403 does not apply in this case, and the defendant's sentence remains intact. The Third Circuit has so held. *United States v. Hodge*, 948 F.3d 160 (3d Cir. 2020).

The pandemic by itself does not present a basis for relief. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify

compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Further, Skeeters is presently held at a facility that has had modest success in mitigating the spread of the disease. At USP Lewisburg, 85 inmates previously tested positive; all were isolated and recovered. There are no inmates currently reported as positive. The institution houses 1,030 inmates, with an additional 255 inmates in an attached camp.

To be certain Skeeters is not at risk, we obtained his recent medical records from BOP. They reveal that Skeeters, who is 44 years old, is in good health. He rarely avails himself of health services, and takes no medication. Most recently, on October 10, 2019, he requested a general physical. The examiner wrote: "He states he just wants to make sure everything is going well and to have lab work ordered for 'everything.' Inmate has no specific complaints or concerns at this time." The only result of note was a determination that his hemoglobin A1C is 6.3, which is prediabetic. He was accordingly counseled on exercise and diet that will prevent the development of diabetes.[1]

---

[1] While diabetes is a CDC risk factor for a severe outcome from COVID-19, prediabetes is not. *See, e.g.*, *United States v. Hooks*, 2020 WL 4756341 (E.D. Pa. Aug. 17, 2020) (Pratter, J.) (42-year-old who presents mild asthma, sleep apnea, and prediabetes does not present a risk factor and is not eligible for release); *United States v. Mathe*, 2020 WL 3542177 (E.D. Pa. June 30, 2020) (Kearney, J.) (defendant is 48; prediabetes with A1C of 5.7 is not a risk factor); *United States v. Thomas*, 2020 WL 4754191 (W.D. Pa. Aug. 17, 2020) (prediabetes is not a risk factor; lengthy discussion and citation of numerous cases).

## II.     Discussion.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act on December 21, 2018, provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1)  in any case—
>
> (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Accordingly, the relevant policy statement of the Commission is binding on the Court. *See Dillon v. United States,* 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by

the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).[2]

The Sentencing Guidelines policy statement appears at § 1B1.13, and provides that the Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable," and the Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Critically, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A)   Medical Condition of the Defendant.—
>
>    (i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis

---

[2] Prior to the passage of the First Step Act, while the Commission policy statement was binding on the Court's consideration of a motion under § 3582(c)(1)(A), such a motion could only be presented by BOP. The First Step Act added authority for an inmate himself to file a motion seeking relief, after exhausting administrative remedies, or after the passage of 30 days after presenting a request to the warden, whichever is earlier.

Under the law, the inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon,* 560 U.S. at 827-28 (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under Section 3582(c)(2) regarding the imposition of a sentencing modification).

of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or medical condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)    Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)    Family Circumstances.—

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)    Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

In general, the defendant has the burden to show circumstances meeting the test for compassionate release. *United States v. Heromin,* 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019); *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25,

2019). As the terminology in the statute makes clear, compassionate release is "rare" and "extraordinary." *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted).

As stated above, Skeeters seeks relief only on the basis of the change in sentencing law related to Section 924(c). This Court has held, in agreement with the government's view, that this change in sentencing law is not an "extraordinary and compelling reason" allowing compassionate release, as such reasons are limited to the health, age, and family circumstances described in the guideline policy statement. *United States v. Brooks*, 2020 WL 4347373, at *5 (E.D. Pa. July 29, 2020) (Bartle, J.) (compassionate release is not available based on the change in law regarding stacked 924(c) sentences). As Skeeters presents no other permissible basis for relief, his motion must be denied. *See also* 28 U.S.C. § 994(t) (compassionate release may not be based on rehabilitation alone).

We recognize that Skeeters' sentence is severe, and would not be imposed on a like offender today. But it bears noting that even if he were eligible for relief, such relief would be quite premature. Under current law, the mandatory sentences for his four gunpoint robberies would total 28 years; he has only served about 9.[3] We are gratified to

---

[3] To be sure, many district courts here and throughout the country are divided on the question whether compassionate release is available to ameliorate stacked 924(c) sentences. We will provide further briefing at the Court's direction. *Compare, e.g.*, *United States v. Andrews*, 2020 WL 4812626, at *7 (E.D. Pa. Aug. 19, 2020) (Robreno, J.) (holding that a court has authority to define qualifying extraordinary circumstances, but agreeing with this Court that a court may not consider the length of the sentence, as that is based on legislative prerogative, particularly where, as here (in a case involving stacked 924(c) terms), the sentence is based on mandatory minima); *with United States v. Clausen*, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020) (Pappert, J.) (the court will reduce a 213-year stacked 924(c) sentence based on the change in law and the

learn of his efforts toward rehabilitation, and to note that his disciplinary record is impressive (with only two minor infractions, the most recent of which was in 2014). We encourage him to continue on this course, so he is situated for relief should he be eligible at a later time based on a further legislative action by Congress or an exercise of executive clemency. But at this time, the motion for compassionate release should be denied.

        Respectfully yours,

        WILLIAM M. McSWAIN
        United States Attorney


        */s Robert A. Zauzmer*
        ROBERT A. ZAUZMER
        Assistant United States Attorney
        Chief of Appeals


        */s Salvatore L. Astolfi*
        SALVATORE L. ASTOLFI
        Assistant United States Attorney
        Chief, Violent Crime

---

defendant's "remarkable record of rehabilitation"); *United States v. Pollard*, 2020 WL 4674126 (E.D. Pa. Aug. 12, 2020) (Beetlestone, J.) (holding that compassionate release is available to address stacked 924(c) terms; the sentence is reduced to the 168-month term that would apply today for two 924(c) brandishing offenses). But even then, there is no precedent for reduction of the sentence to a term as short as Skeeters has served. *See, e.g.*, *United States v. Chaplain*, 2020 WL 5027484, at *3 (D. Neb. Aug. 24, 2020) (Camp, J.) (opining that relief on stacked 924(c) terms is possible, but denying compassionate release as the defendant has served only a small part of the sentence that would apply today; "Accordingly, the Court will deny his Motion without prejudice to resubmission no sooner than the year 2036.").

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading has been served by first-class mail, postage prepaid, upon:

>Mr. Stanley Skeeters
>No. 59590-066
>USP Lewisburg
>P.O. Box 1000
>Lewisburg, PA  17837

>*/s Salvatore L. Astolfi*
>SALVATORE L. ASTOLFI
>Assistant United States Attorney

Dated:  September 3, 2020.